**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DR. SHIVA AYYADURAI,<br><br>                     Plaintiff,<br><br>          v.<br><br>WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts;<br><br>TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; and<br><br>HARMEET K. DHILLON, in her official capacity as Assistant Attorney General for the Civil Rights Division,<br><br>                     Defendants. | No. 1:26-cv-13329-BEM |

**STATE DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION**

State Defendant William Francis Galvin, in his official capacity as Secretary of the Commonwealth of Massachusetts (the "Secretary"), hereby opposes Plaintiff Shiva Ayyadurai's ("Plaintiff") Emergency Motion for a Preliminary Injunction (Docket No. 2) (the "Motion" or "Mot."). Plaintiff's Motion is the latest in his years-long series of attempts to argue—in both federal and state court—that Massachusetts is improperly "deleting" or "destroying" ballot images. In fact, consistent with both Massachusetts and federal law, ballot images are neither captured nor stored in the course of Massachusetts elections, and paper ballots serve as the official voting records. Accordingly, Plaintiff's request for an order "enjoining Defendant Galvin from configuring optical scan tabulators to disable image-saving capabilities" should be denied. Complaint (Docket No. 1) ("Compl.") at p. 5.

1

Plaintiff has failed to demonstrate a likelihood of success on the merits of his claims for at least three independent reasons.  First, because Plaintiff's Motion is nothing more than an attempt to re-litigate a state court decision denying his requested relief, this Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine, or should abstain from the exercise of its jurisdiction under the *Colorado River* doctrine.  Second, the federal law cited by Plaintiff, 52 U.S.C. § 20701, creates no private right of action.  And third, Plaintiff has failed to allege that Massachusetts administers its elections in any way inconsistent with federal law.

Further, because paper ballots—*i.e.*, the official records of Massachusetts elections—will be preserved in accordance with the law, Plaintiff has demonstrated no risk of irreparable harm from a lack of digital images of those paper ballots.  And since Plaintiff's requested relief would require burdensome and legally unnecessary changes to the administration of Massachusetts elections, the balance of hardships weighs in favor of the Secretary.  Finally, because Plaintiff has identified no legitimate interest in the generation and retention of ballot images where the Commonwealth's paper ballot system satisfies all applicable law, the public interest likewise counsels against granting the extraordinary remedy of preliminary injunctive relief.

For all of these reasons, the Secretary respectfully requests that the Court deny Plaintiff's Motion without a hearing.

## STATUTORY BACKGROUND

Federal law requires election officials to preserve, for a period of twenty-two months, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting."  52 U.S.C. § 20701.  In Massachusetts, paper ballots constitute the official records of election votes.  *See, e.g.*, G.L. c. 54, § 44 ("The official ballots shall . . . be of ordinary white printing paper . . . ."); G.L. c. 54, § 107 (describing enclosure,

sealing, certification, and transportation of paper ballots); G.L. c. 54, § 105A (describing counting, inspection, transportation, and protection of paper ballots at precincts using approved electronic voting methods). Massachusetts law requires "[c]ity and town clerks [to] retain in their custody the envelopes or containers containing the ballots cast, without examining them or permitting them to be examined by any person except as required by law, and upon the expiration of the period fixed for their preservation [to] cause such ballots to be destroyed." G.L. c. 54, § 109. The foregoing laws, which relate to the retention of existing voting documents, do not require the creation of any additional records not otherwise required by law.

With respect to the federal standards governing voting equipment, 52 U.S.C. § 21081 outlines the requirements for "[e]ach voting system used in an election for Federal office." The law requires, among other things, that the voting system "permit the voter to verify (in a private and independent manner) the votes selected by the voter on the ballot before the ballot is cast and counted;" "provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error;" and "notify the voter" and provide him or her with "the opportunity to correct the ballot" if he or she "selects votes for more than one candidate for a single office." 52 U.S.C. § 21081(a)(1). It also requires that the voting system "produce a record with an audit capacity;" be accessible to individuals with disabilities; have alternative language accessibility; and meet certain error rate standards. 52 U.S.C. § 21081(a)(2)-(5). Nowhere does the law require the generation or retention of ballot images. To ensure compliance with these and other requirements, Massachusetts law requires that the Secretary "examine all types of voting equipment including ballot boxes, counting apparatus, and voting machines and determine whether such equipment complies with the minimum requirements for such equipment imposed by law and

3

whether the use of such equipment would further the efficient administration of elections." G.L. c. 54, § 32.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are drawn from the Motion and Complaint, supplemented or corrected where necessary by information supplied in the Affidavit of Michelle K. Tassinari ("Tassinari Affidavit" or "Tassinari Aff.") (Ex. 1).[1]

## I.   Administration of Massachusetts Elections

In Massachusetts, all voters cast a paper ballot. *See* Tassinari Aff. at ¶ 7. Some municipalities hand-count these paper ballots to determine the number of votes cast in favor of each candidate; others use electronic tabulating machines (with different machines used by different municipalities). *See id.* at ¶ 8; *id.* at Exs. E-G (certification documents). In order for a municipality to use an electronic tabulator, that particular tabulator model must be certified by the Secretary's office. *See id.* at ¶ 9; *id.* at Ex. D (Standards for Certification of Voting Equipment in Massachusetts); G.L. c. 54, § 32 (describing examination and approval of voting equipment by Secretary's office). Some tabulator models used in Massachusetts have the capacity to capture ballot images, but are required to have the ability to disable that capacity before being certified; others do not have the capacity in the first place. *See* Tassinari Aff. at ¶¶ 8, 10.

Paper ballots, which are the official records of the votes cast in an election, are sealed and secured for twenty-two months following an election, after which period they are destroyed. *See* Tassinari Affidavit at ¶ 11; 52 U.S.C. § 20701; G.L. c. 54, § 44; G.L. c. 54, § 109. Prior to

---

[1] Attorney Tassinari is First Deputy Secretary of the Commonwealth, as well as Director and Legal Counsel of the Elections Division of the Office of the Secretary of the Commonwealth. *See* Tassinari Aff. at ¶ 2. The Tassinari Affidavit, dated May 21, 2026, was submitted in connection with the Secretary's response to Plaintiff's state court filings, described below.

destruction, ballots may be unsealed and examined only where required by law (*e.g.*, in the case of a recount or in connection with a post-election audit).  *See* Tassinari Affidavit at ¶ 11; G.L. c. 54, § 109 (city and town clerks shall retain ballots "without examining them or permitting them to be examined by any person except as required by law"); G.L. c. 54, § 105A (describing appropriate procedures, including sealing, for handling paper ballots); G.L. c. 54, § 107 (same); G.L. c. 54, § 135 (describing procedure for unsealing, reviewing, and resealing ballots in connection with a recount).  Accordingly, for the subset of voting software that has the capability to capture ballot images, Massachusetts certification documents require said capability to be turned off.  *See* Tassinari Aff. at ¶¶ 8-10; *id.* at Ex. E (certification for DS200 tabulator) (noting that although the scanner "has the ability to capture digital images of each ballot, . . . this function can be disabled to comply with current state law"); *id.* at Ex. F (certification for DS450 tabulator) (same); *id.* at Ex. G (certification for ImageCast tabulator) (same).

## II.      Plaintiff's Political and Litigation History

Plaintiff seeks to run as an Independent candidate for United States Senate in the upcoming November 2026 election.  Mot. at p. 1.  He previously ran for United States Senate in 2020 – first as a Republican candidate in the primary election, and then as a write-in candidate in the general election.  *See* Tassinari Aff. at ¶¶ 3-4.  Plaintiff's unsuccessful 2020 campaign sparked two prior lawsuits in the Massachusetts Federal District Court:  *Ayyadurai v. Galvin*, No. 1:20-CV-11889 (D. Mass.) ("Galvin I"); and *Ayyadurai v. Galvin*, No. 1:20-CV-12080 (D. Mass.) ("Galvin II"), both of which were dismissed.[2]  In the second of these lawsuits, Plaintiff alleged—as he does

---

[2] Plaintiff's first-filed federal lawsuit arose out of a Twitter post in which Plaintiff falsely claimed that Massachusetts had destroyed more than one million ballots from the Republican primary election.  *See* Galvin I, Docket No. 1 (Complaint); *id.* at Docket No. 15 (Opposition to Plaintiff's Motion for an Emergency Temporary Restraining Order).  After the Secretary's office reported Plaintiff's false statements to Twitter, Plaintiff was suspended from the platform and he sued for

here—that Massachusetts was improperly deleting ballot images. *See* Galvin II, Docket No. 1 (Complaint).

On April 17, 2026, Plaintiff filed a Petition for Writ of Mandamus in the Massachusetts Supreme Judicial Court for Suffolk County, seeking an order compelling the Secretary to "retain[] and preserv[e] all ballot images and related election records generated in connection with the 2026 United States Senate election in Massachusetts." *See Ayyadurai v. Galvin*, No. SJ-2026-0164 (Mass. Supreme Judicial Court for Suffolk County) (the "Single Justice Matter") at Docket No. 1 (Ex. 2), p. 1. The Secretary filed an Opposition to Plaintiff's Petition, explaining that the requested relief would be futile because paper ballots—rather than ballot images—are the official records of Massachusetts elections, and ballot images are therefore neither created nor stored in the Commonwealth. *See id.* at Docket No. 6 (Ex. 3).

On May 26, 2026, the Single Justice transferred Plaintiff's matter to the Suffolk County Superior Court. *See id.* at Docket No. 7. Thereafter, Plaintiff filed an "Emergency Motion for Preliminary Injunction" in the Superior Court. *See Ayyadurai v. Galvin*, No. 2684-CV-01614 (Mass. Superior Court, Suffolk County) (the "Superior Court Matter") at Docket No. 8 (Ex. 4) (the "Superior Court PI Motion"); *id.* at Docket Nos. 7, 9; Mot. at p. 2. Following a hearing, the Superior Court denied Plaintiff's request for emergency relief, reasoning that Plaintiff did not have a likelihood of success on the merits because (1) the relevant federal law did not allow for a private right of action; and (2) in any event, there was no evidence that the Secretary was not "in full

---

alleged First Amendment violations. *See id.* In August 2021, Plaintiff voluntarily dismissed this lawsuit. *See id.* at Docket No. 196 (Notice of Voluntary Dismissal). In his second-filed federal lawsuit, Plaintiff sought to prevent certification of the Commonwealth's election results from the 2020 Republican primary and the 2020 United States Senate race. *See* Galvin II, Docket No. 1 (Complaint). This lawsuit was dismissed for lack of subject-matter jurisdiction. *See id.* at Docket No. 35 (Memorandum and Order); *Ayyadurai v. Galvin*, 560 F.Supp.3d 406 (2021).

compliance with applicable federal and state law." *See* Superior Court Matter at Docket No. 10 (Denial of Plaintiff's Request for a Temporary Restraining Order or Preliminary Injunction or for Any Emergency Order(s)) (the "Superior Court Order") (Ex. 5), pp. 4, 6-8; Mot. at p. 2.

On July 6, 2026, Plaintiff filed an Emergency Petition for Interlocutory Review and Relief in the Massachusetts Appeals Court, seeking reversal of the Superior Court Order. *See Ayyadurai v. Galvin*, No. 2026-J-0633 (Mass. Appeals Court) at Docket No. 1. On July 16, 2026, the Appeals Court denied Plaintiff's petition, concluding that Plaintiff had failed to "demonstrate that the Superior Court judge applied a legally incorrect standard or abused her discretion in denying the requested injunction." *Id.* at July 16, 2026 Order. *See also* Compl. at ¶ 3. On July 21, 2026, Plaintiff filed the instant Complaint and Motion. *See* Docket Nos. 1-2.

## LEGAL STANDARD

A preliminary injunction is "a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). A plaintiff seeking a preliminary injunction bears the burden of demonstrating "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003). The first factor—likelihood of success on the merits—is the "*sine qua non* of a preliminary injunction. . . . If the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc.*, 794 F.3d 168, 173 (1st Cir. 2015) (italics added) (quotations, citations, and alterations omitted).

## ARGUMENT

### I.   Plaintiff Has Failed to Establish a Substantial Likelihood of Success on the Merits.

#### A.   This Court Lacks Subject-Matter Jurisdiction Under *Rooker-Feldman*, or Should Abstain from Exercising its Jurisdiction Under *Colorado River*.

Because Plaintiff's Motion seeks to re-litigate an issue already decided in the Superior Court Matter, this Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine. Under this doctrine, federal courts lack jurisdiction over complaints that "essentially invit[e] federal courts of first instance to review and reverse unfavorable state-court judgments." *T.M. v. University of Maryland Med. Sys. Corp.*, 146 S. Ct. 1739, 1747 (2026) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283-84 (2005)). *See also id.* at 1751 (emphasizing the "cooperation and comity on which our federal system is built") (quotations, citation, and alteration omitted). Accordingly, where "state-court losers complain[] of injuries caused by state-court judgments rendered before the district court proceedings commenced and invit[e] district court review and rejection of those judgments," dismissal for want of subject-matter jurisdiction is warranted. *Exxon*, 544 U.S. at 284. This is the case regardless of whether plaintiffs seek rejection of the prior state court judgment "implicitly or explicitly." *Klimowicz v. Deutsche Bank Nat'l Trust Co.*, 907 F.3d 61, 66 (1st Cir. 2018). So long as the relief sought in federal court would "effectively overturn the state court's decision," *Rooker-Feldman* operates to bar jurisdiction. *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 33 (1st Cir. 2004).

Here, the Superior Court has already determined that the relevant federal law, 52 U.S.C. § 20701, does not provide for a private right of action, and that even if it did, Plaintiff has presented no evidence of a violation of state or federal law. *See* Superior Court Order at pp. 4, 6-8; Mot. at p. 2. Plaintiff also already filed a petition for interlocutory review of the Superior Court Order, and has already seen that petition denied by the Massachusetts Appeals Court. *See* Compl. at ¶ 3.

8

Now, Plaintiff once again seeks the very relief denied to him in the Superior Court Matter: an order "enjoining Defendant Galvin from configuring optical scan tabulators to disable image-saving capabilities." Compl. at p. 5. *Compare* Superior Court PI Motion at p. 18 (requesting order "prohibiting [Defendant Galvin] from implementing any software configuration or administrative policy that permits the deletion, overwriting, or non-storage of digital ballot images"). Accordingly, Plaintiff's Motion is nothing more than a last-ditch effort to overturn the Superior Court's decision, and should be denied for lack of subject-matter jurisdiction.

To be sure, the Superior Court Order is styled as the denial of a motion for emergency relief, rather than as a final judgment on the merits. *See* Superior Court Order at pp. 1, 8; *T.M.*, 146 S. Ct. at 1744 (*Rooker-Feldman* doctrine applies to "state-court *judgments*") (emphasis added) (citation omitted). But as Plaintiff himself concedes, the Superior Court Order operates, for all practical purposes, as a final decision regarding Plaintiff's claims, which will not be further addressed in advance of the November 2026 elections to which they are relevant. *See* Mot. at p. 2 ("state court remedies are completely exhausted," and there is "no adequate remedy at state law"); Compl. at ¶ 3 (same). Plaintiff's federal lawsuit is therefore nothing more than an attempt to take a second bite at the emergency-relief apple, and thereby to end-run the reasoned written decision of the Superior Court. These are precisely the circumstances under which *Rooker-Feldman* principles should operate to bar jurisdiction. *Cf. Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico.*, 410 F.3d 17, 28-29 (1st Cir. 2005) (*abrogated on other grounds by T.M.*, 146 S. Ct. 1739) (where state court proceedings had ended with respect to the sole federal issue, "the district court lacked jurisdiction to review the state court decision, despite [its] interlocutory nature"); *South Bos. Allied War Veterans Council v. Zobel*, 830 F.Supp. 643, 647 (D. Mass. 1993) ("Even when, as here, plaintiff brings its case as a new § 1983 claim to

9

challenge an action taken by the state court, the district court is without jurisdiction if the federal claim is inextricably intertwined with the state court's decision," even if "the decision from which the plaintiffs seek relief is preliminary in nature") (quotations and citations omitted).

If, however, this Court determines that *Rooker-Feldman* does not operate to bar its subject-matter jurisdiction, it should nevertheless decline to exercise that jurisdiction under the *Colorado River* doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). In *Colorado River*, the United States Supreme Court held that in "exceptional" cases, abstention in deference to a concurrent state-court matter can be appropriate based on "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" in a single forum. *Id.* at 817-18 (citations and alterations omitted). The First Circuit has developed a list of factors that may be considered when determining whether a case warrants abstention under *Colorado River*:

> (1) whether either court has assumed jurisdiction over a *res;* (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 71-72 (1st Cir. 2005). These factors are not an "exhaustive list," however, nor are they a "litmus test for *Colorado River* deference, which must remain a discretionary tool." *Currie v. Group Ins. Comm'n*, 290 F.3d 1, 10 (1st Cir. 2002).

Here, the *Colorado River* factors counsel in favor of abstention. With respect to the third factor,[3] piecemeal litigation would be uniquely problematic given the time-sensitive and

---

[3] The Secretary does not contend that the first, second, or eighth *Colorado River* factors are relevant here.

logistically-demanding nature of Plaintiff's requested relief, which concerns the administration of the fast-approaching 2026 elections. *See infra* at pp. 14-15. With respect to the fourth factor, the state court matters were filed (and the Superior Court PI Motion was decided) before Plaintiff filed this case. With respect to the fifth factor, although Plaintiff's claims are based on a federal statute, his requested relief implicates fundamental elements of Massachusetts law relating to the conduct of its elections, including technical and nuanced requirements for how ballots are handled. *See, e.g.*, G.L. c. 54, § 107; G.L. c. 54, § 105A; G.L. c. 54, § 109. With respect to the sixth factor, Plaintiff has presented no reason to doubt that Massachusetts courts are well-positioned to protect the parties' interests. And finally, with respect to the seventh factor, Plaintiff's federal lawsuit is clearly a contrived attempt to avoid the Superior Court Order by bringing the same claims in a new forum. This fact alone counsels strongly in favor of abstention – the First Circuit has made clear that where a federal action was "filed or pursued as a reaction to an adverse state court action," this factor "weighs heavily in favor of abstention." *Rio Grande*, 397 F.3d at 72. *See also Cruz v. Melecio*, 204 F.3d 14, 24 (1st Cir. 2000) (where "appellants filed the present suit in an effort to detour around an unfavorable judgment of the commonwealth trial court, [their] attempted end run is highly relevant to the calculus of abstention"). Here, Plaintiff readily admits that his federal suit is an attempt to avoid the results of the Superior Court Order. *See* Mot. at pp. 2-4. Accordingly, this is precisely the sort of "exceptional" matter that warrants abstention under *Colorado River*.

**B.      There Is No Private Right of Action Under the Relevant Federal Law.**

Even if this Court determines that it has subject-matter jurisdiction over Plaintiff's claims, and even if it opts to exercise that jurisdiction rather than abstaining in light of the unique factual circumstances presented here, the Motion should be denied because Plaintiff has failed to allege a viable cause of action.

11

With respect to the Secretary, Plaintiff's Complaint asserts a single claim: "Deprivation of Due Process and Equal Protection (42 U.S.C. § 1983)." Compl. at Count I. Neither the Complaint nor the Motion lays out any further explanation, however, regarding how the administration of Massachusetts elections might be inconsistent with due process or equal protection. Instead, Plaintiff's various requests for relief appear to hinge entirely on his argument that the relevant federal statute, 52 U.S.C. § 20701, requires Massachusetts election officials to store and preserve ballot images. *See, e.g.*, Compl. at ¶ 2 (Massachusetts "administrative protocol flatly violates the mandatory 22-month federal retention mandate under 52 U.S.C. § 20701"); Mot. at p. 4 ("Under 52 U.S.C. § 20701, federal law commands the non-discretionary retention and preservation of all election records.").

Section 20701, however, does not provide for a private right of action. *See Ayyadurai v. Galvin*, 560 F.Supp.3d at 408-09 (Plaintiff's Complaint in Galvin II was deficient because it "alleged that Secretary Galvin had failed to preserve ballot images in violation of 52 U.S.C. §§ 20701-20702, which do not provide a private right of action"). Accordingly, Plaintiff has no likelihood of success on the merits of his claim against the Secretary. *See* Superior Court Order at pp. 7-8 (because "the law makes clear there is no private right of action pursuant to [52 U.S.C. § 20701,]" and because "the legal basis upon which Dr. Ayyadurai maintains his cause of action is [52 U.S.C. § 20701], his case has no likelihood of success on its merits").

### C. Plaintiff Has Not Alleged a Violation of State or Federal Law.

Finally, even if this Court were to consider Plaintiff's arguments regarding alleged violations of 52 U.S.C. § 20701 on their merits, which it should not, those arguments would fail to establish a likelihood of success. As stated, Plaintiff's argument rests on federal law requiring the retention of "all records and papers which come into [an election officer's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C.

12

§ 20701.  Nothing in this statute requires Massachusetts to *generate* ballot images of the official paper ballots.  Nor could it, given that other federal statutes expressly contemplate and permit the use of hand-counted paper ballots, which are used in some Massachusetts municipalities and which, by definition, would not be subject to electronic imaging software generating a ballot image.[4]  *See* 52 U.S.C. § 21081(a)(1)(B) (describing how states or jurisdictions using "a paper ballot voting system, a punch card voting system, or a central count voting system" may meet federal requirements); 52 U.S.C. § 21081(c)(2) (precluding definitions that "make[] it impossible for a paper ballot voting system to meet the requirements"); *see also* Tassinari Aff. at ¶ 8.  Accordingly, nothing in the federal scheme requires that ballot images be created in connection with Massachusetts elections—and indeed, they are not.  *See* Tassinari Aff. at ¶ 10.  *See also* Superior Court Order at p. 8 (even if there were a private right of action under the relevant federal statute, "a review of the Opposition filed by [the Secretary] demonstrates to this Court that the Court's analysis would not change," and Plaintiff "still would fail to demonstrate a likelihood of success on the merits").  For all of these reasons, Plaintiff has no likelihood of success on the merits of his claim against the Secretary.

## II.  The Remaining Preliminary-Injunction Factors Likewise Warrant Denying Plaintiff's Motion.

Because Plaintiff has failed to establish a likelihood of success on the merits, the three remaining preliminary-injunction factors "become matters of idle curiosity."  *Arborjet*, 794 F.3d at 173 (citation omitted).  Nevertheless, each of these factors likewise weighs against allowing Plaintiff's Motion.

---

[4] Just as ballot images could not be generated for votes cast in Massachusetts municipalities which hand-count votes, they could not be generated for votes cast in municipalities which employ tabulators without the technical capacity to capture ballot images.  *See* Tassinari Aff. at ¶ 8.

As to irreparable harm, Plaintiff alleges that "[a]bsent an immediate injunction from this Court, the 2026 digital ballot images will be auto-deleted as the election occurs," and the "digital evidence" will be "gone forever." Mot. at p. 4. *See also* Mot. at p. 3 (alleging that the records at issue will be "destroyed"). As a preliminary matter, it is not accurate to say that Massachusetts ballot images will be "auto-deleted" or "destroyed." Rather, in the case of municipalities where ballots are counted by hand or using tabulators without the capacity to capture ballot images, no "ballot images" could exist in the first place. *See* Tassinari Aff. at ¶¶ 8-10. And in the case of municipalities where ballots are counted using tabulators that do have the technological capacity to create ballot images, those images will not be created because the capacity will be disabled pursuant to state law. *See id.* at ¶ 10; *id.* at Exs. E-G. Accordingly, the images that Plaintiff claims will be "deleted" will not have been created in the first place.

In any event, Plaintiff has failed to establish that a lack of ballot images will cause him any degree of harm. Paper ballots—which are the official records of Massachusetts elections and which would be the underlying source of any "ballot images"—will not be "gone forever," but rather sealed and secured for twenty-two months pursuant to 52 U.S.C. § 20701, and available for examination during that period where required by law. *See* G.L. c. 54, § 109 (city and town clerks shall retain ballots "without examining them or permitting them to be examined by any person except as required by law"); G.L. c. 54, § 135 (describing procedure for unsealing, reviewing, and resealing ballots in connection with a recount). Plaintiff has not alleged any legally-significant purpose that would be served by the generation and retention of ballot images that is not already served by the Commonwealth's treatment of paper ballots.

Turning next to the balance of hardships, Plaintiff's Motion asserts that the requested relief "imposes zero administrative burden on Defendant Galvin," requiring him "simply to stop

14

instructing local officials to alter the native, factory settings of the voting machines." Mot. at p. 4. This allegation fundamentally mischaracterizes and downplays the complexities of administering an election. As previously stated, Massachusetts law prohibits the examination of official ballots except where required by law (*e.g.*, in the case of a recount). *See, e.g.*, G.L. c. 54, § 109; G.L. c. 54, § 105A; G.L. c. 54, § 107; G.L. c. 54, § 135. For this reason, in the case of electronic tabulators that have the capacity to capture ballot images, Massachusetts certification documents require that capability to be turned off. *See* Tassinari Aff. at ¶¶ 8-10; *id.* at Exs. E-G. If this Court were to conclude that this capability must be turned on, it would create substantial logistical challenges – including by requiring the renegotiation of relevant government contracts and the reprogramming of certain machines. Moreover, such a holding would raise questions regarding how best to secure ballot images in a manner consistent with the above-described law, as well as about the proper course of action in municipalities where there is no ability to generate ballot images because votes are counted by hand or by electronic tabulators without the relevant capacity. These issues would present substantial challenges at any time, and particularly with less than three months remaining before the federal election.

Finally, with respect to the public interest, Plaintiff has failed to allege any legitimate public interest in the generation and retention of ballot images, particularly where the official records of Massachusetts elections—*i.e.*, the paper ballots—are retained pursuant to federal law, and are subject to examination where appropriate. *See* Mot. at p. 4 ("The public interest is profoundly served by ensuring that federal election data is preserved so that electronic vote counts can be mathematically verified."). Accordingly, each of the four preliminary-injunction factors counsels against granting injunctive relief.

## CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the Court deny Plaintiff's

Emergency Motion for a Preliminary Injunction without a hearing.

Respectfully submitted,

WILLIAM FRANCIS GALVIN, in his official
capacity as SECRETARY OF THE
COMMONWEALTH OF MASSACHUSETTS,

By his attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Marina Pullerits*
Marina Pullerits, BBO No. 704163
Assistant Attorney General
Government Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2968
Marina.Pullerits2@mass.gov

August 6, 2026

16

## <u>CERTIFICATE OF SERVICE</u>

I, Marina Pullerits, hereby certify that this document, filed electronically on August 6, 2026, will be sent via email to the *pro se* plaintiff, who has assented in writing to email service.

Dr. Shiva Ayyadurai
701 Concord Avenue
Cambridge, MA 02138
vashiva@cytosolve.com


/s/ Marina Pullerits
Marina Pullerits, BBO# 704163
Assistant Attorney General
Government Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2968
Marina.Pullerits2@mass.gov

17